

FILED

MAR 14 2016

Clerk, U.S. District Court
District Of Montana
Billings

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 15-121-BLG-SPW |
|---|---|
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| WILLIAM WOODROW SPRINGFIELD, SR., | |
| Defendant. | |

Springfield is charged with Possession with Intent to Distribute Methamphetamine. (Doc. 1). He has moved to suppress the evidence against him. (Doc. 19). The Court held an evidentiary hearing on Springfield's motion on March 11, 2016. The Court heard from Bureau of Indian Affairs Officers Jose Valdez and Dana Bullcoming. Having read and reviewed the parties' submissions and the applicable law, and having heard the testimony of the witnesses noted above, the Court DENIES Springfield's motion.

1

## I. BACKGROUND

In the early hours of the morning on August 27, 2015, Bureau of Indian Affairs Officer Jose Valdez was conducting a security check at the Charging Horse Casino in Lame Deer, Montana. He saw a maroon Buick sedan pull into a parking spot with a license plate number that matched a stolen vehicle report issued by the Billings Police Department ten days earlier. He contacted BIA dispatch and confirmed the car was stolen. He also requested back up.

While waiting for back up, defendant William Springfield exited the Buick through the front passenger door. Valdez pointed his gun at Springfield and told him to get on the ground. BIA Officer Dana Bullcoming arrived then. Valdez told Bullcoming that a female, who was ultimately identified as Jamie Hart, was still in the Buick's driver's seat. Bullcoming removed Hart from the car, handcuffed her, and placed her in his patrol car. Bullcoming also handcuffed Springfield and helped him to his feet. Valdez searched Springfield, found $1,093.00 in cash in his pockets, and placed him in Valdez's patrol car. Valdez secured the cash as evidence.

Valdez and Bullcoming conducted an inventory search of the car. Valdez found a black purse in the driver's seat area that contained what appeared to be marijuana and Jamie Hart's driver's license. He found a digital scale in the same

2

area. Bullcoming found a plastic container under the front passenger seat that contained what appeared to be methamphetamine and multiple baggies.

The officers secured the evidence they had found and the Buick was towed to the BIA impound lot. Springfield and Hart were arrested and taken to the BIA Correctional Center.

## II. ANALYSIS

### 1. Arrest

At the time he ordered Springfield to the ground, all Valdez knew was that Springfield was a passenger in a stolen vehicle. This fact alone does not give rise to probable cause for arrest. *See Rohde v. City of Roseburg,* 137 F.3d 1142, 1144 (9th Cir. 1998) ("Absent some indication of a relationship more substantial than that of driver and passenger, the arresting officer cannot simply impute the driver's presumptive awareness of the vehicle's legal condition to the passenger.") A reasonable person would not feel free to leave when ordered to the ground at gunpoint, handcuffed and detained by two police officers, and placed in the back of a patrol car. *United States v. Delgadillo–Velasquez,* 856 F.2d 1292, 1295 (9th Cir.1988). At that point, Springfield was arrested. During the illegal arrest, Valdez seized $1093.00 in cash from Springfield's person. Because the arrest was not supported by probable cause, this evidence must be suppressed.

3

## 2. Evidence found in the Buick

Springfield argues that because his arrest lacked probable cause, the Court should suppress all of the evidence against him, including the drugs found in the Buick. Springfield lacks standing to challenge law enforcement's search of the Buick, however.

"A person seeking to exclude evidence allegedly obtained in violation of the fourth amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence." *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005). To establish standing "the defendant must establish that he had a 'legitimate expectation of privacy' in the place searched or in the property seized." *United States v. Kovac*, 795 F.2d 1509, 1510 (9th Cir. 1986) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978)). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Pulliam*, 405 F.3d at 786 (quoting *Rakas*, 439 U.S. at 134).

Applying the above law, the Ninth Circuit has decided that "a passenger with no possessory interest in the car" generally "has no reasonable expectation of privacy in [the] car that would permit [his] Fourth Amendment challenge to a

4

search of the car." *Pulliam*, 405 F.3d at 786; *see also United States v. Wanless*, 882 F.2d 1459, 1462 (9th Cir. 1989) ("as a general rule, only the owner of the vehicle [ ] may challenge an allegedly illegal search.")

The defendant, not the government, bears the burden of proof on the issue of Fourth Amendment standing. *Rakas*, 439 U.S. at 130, n.1. Whether the defendant had a legitimate expectation of privacy in the place searched or the items seized is "threshold question" that a defendant must answer before courts will "consider whether the search was reasonable." *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007).

Here, Springfield has not met his burden of proof for Fourth Amendment standing. There are no facts that set Springfield outside the Ninth Circuit's general rule that passengers have no privacy interest in the driver's car. In fact, the aggravating fact that the car was stolen weakens Springfield's right to privacy even further. *See United States v. Caymen*, 404 F.3d 1196, 1200 (9th Cir. 2005) (finding that the Fourth Amendment does not protect a defendant from a warrantless search of stolen property because a right to privacy in the stolen property is not one that society accepts as reasonable). Without Fourth Amendment standing, Springfield cannot contest the search of the Buick.

5

Springfield argues that he has standing because the Court should treat his illegal arrest as synonymous with an illegal stop and suppress the evidence law enforcement found in the Buick. But Springfield ignores the distinction between an illegal stop and an illegal detention, which is in essence, the difference between the outcomes in the cases upon which he relies, *United States v. Twilley*, 222 F.3d 1092 (9th Cir. 2000) and *United States v. Arvizu*, 232 F.3d 1241 (9th Cir. 2000), and the case that controls here, *United States v. Pulliam*.

Relying on *United States v. Twilley* and *United States v. Arvizu*, Springfield argues that because law enforcement illegally arrested him, the evidence obtained during law enforcement's subsequent search of the Buick must be suppressed as "fruit of the poisonous tree." (Doc. 31 at 4-5). But the Ninth Circuit squarely rejected this argument in *Pulliam*, when it held that "evidence will not be excluded as fruit unless the illegality is at least the "but for" cause of the discovery of the evidence." *Id.* at 786-87. This holding distinguishes the factual scenario of an illegal stop from an illegal arrest.

But for the illegal stops in *Twilley* and *Arvizu*, law enforcement never would have approached the vehicles, spoken with the defendants, observed their behavior, smelled drugs, or questioned the defendants' stories – in other words, law enforcement's suspicions never would have been raised and the arrests would

6

never have occurred. *Twilley*, 222 F.3d at 1096; *Arvizu*, 232 F.3d at 1251-52. In *Pulliam*, however, the Ninth Circuit explained that "when the initial stop is lawful, the continued detention of the vehicle does not necessarily entail the detention of its occupants; they could simply be permitted to walk away . . . but a passenger with no possessory interest in a vehicle usually cannot . . . suppress the fruits of that detention, because Fourth Amendment rights are personal [and] may not be vicariously asserted." *Id.* at 789 (quoting *Rakas*, 439 U.S. at 133-34).

In other words, Pulliam's illegal detention as a passenger had no legal effect on the legality of law enforcement's search of the car in which he had been riding. *Id.* at 788-89. Although he was illegally detained, law enforcement did not interrogate Pulliam before searching the car, and even if they had released him rather than detaining him, the search of the car would have still occurred and the gun would have been found. *Id.* at 787.

Here, in exact same fashion, law enforcement did not interrogate Springfield, and even if they had released him rather than detaining him, the search of the car would have occurred and the methamphetamine would have been found. Springfield cannot demonstrate that the methamphetamine was "in some sense the product of his unlawful detention." *Id.* at 787. Accordingly, his argument fails.

7

## 3. Conclusion

Springfield cannot establish standing to contest law enforcement's search of the Buick. His motion to suppress (doc. 19) is DENIED.

DATED this 11th day of March, 2016.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge